[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15335
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-01899-JEO

CHRISTOPHER HESTER,

Plaintiff - Appellant,

versus

UNIVERSITY OF ALABAMA BIRMINGHAM HOSPITAL,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 7, 2020)

Before JORDAN, BRANCH and FAY, Circuit Judges.

PER CURIAM:

Christopher Hester appeals following the grant of summary judgment in favor of University of Alabama Birmingham Hospital in his employment discrimination action brought under Title VII, 42 U.S.C. § 2000e-2(a).  Mr. Hester contends that the district court erred in ruling that he failed to establish a *prima facie* case of race discrimination because he did not show that UABH treated a similarly-situated employee outside of his protected class more favorably.  Mr. Hester also argues that the district court erred in concluding that he failed to show that UABH's proffered reason for firing him was pretextual. After reviewing the record and the parties' briefs, we affirm.

## I

Mr. Hester, who is African-American, began his employment with UABH on March 3, 2011, as a patient observer.  In December of 2013, Mr. Hester applied for and obtained a Patient Care Technician (PCT) position.  He transferred to the Jefferson Tower North 5 (JTN5) unit of the Center for Psychiatric Medicine (CPM) on March 22, 2015.  Employees working in that unit provide long-term care to patients suffering from psychiatric disorders.

## A

As a PCT, Mr. Hester reported to Daniel Nash, the Assistant Nurse Manager in the CPM on the JTN5 unit.  Mr. Nash reported directly to Wren Hand, the Nurse

Manager in the CPM on the JTN5 unit. Ms. Hand reported directly to Steve Nasiatka, the Administrative Director of Nursing at the CPM.

All employees working at UABH must follow certain guidelines and procedures found in the UABH Code of Conduct and the UABH Employee Behavior Policy. As relevant here, CPM employees must complete the Crisis Prevention Institute (CPI) training and apply it while dealing with patients. **[*Id.*]**. The CPI training program focuses on "safe management of disruptive and assaultive behavior." CPI training teaches employees the escalation model of patient behavior, which includes identifying early warnings of behavior escalation and instructing on how to protect themselves and other patients from a patient whose combative behavior has escalated. CPM employees initially receive 8 hours of CPI training in the same month they are hired and then receive 4 hours of recertification training in addition to CPI drills. Mr. Hester received CPI training in December of 2011 and attended a refresher course on March 26, 2015.

On the morning of October 27, 2015, in the exercise of his work responsibilities, Mr. Hester woke patient C.L. from his sleep and told him that breakfast was ready. Mr. Hester then took a seat in a chair placed on the JTN5 floor in the same common area where C.L. awaited breakfast. C.L. refused to allow his vitals to be taken and refused to take his prescribed medication. As a result, and in accordance with hospital policy, his breakfast was delayed until he decided to

3

cooperate.  C.L. became agitated because he had not received his breakfast and began to speak to himself and the hospital staff using violent and manic language. He paced the JNT5 floor, occasionally speaking with Mr. Hester and other members of the staff.  He demanded that Mr. Hester provide him breakfast.

When Mr. Hester refused to provide breakfast, C.L. slowly approached him while addressing him verbally.  As C.L. drew close, Mr. Hester quickly rose from his chair with his hands extended in front of his body and wrestled C.L. to the ground.  As Mr. Hester stood up to lunge at C.L., C.L threw a punch near Mr. Hester's head.  After a brief period of wrestling on the floor, another hospital employee intervened and ended the altercation.  The entire episode lasted only a few seconds.

Shortly after the altercation, Human Resources initiated a review of the incident.  As part of that investigation, Mr. Hester completed a written statement relating his version of the events.  In the statement, Mr. Hester asserted that he was attacked by C.L.  Specifically, he stated:

> [C.L.] became combative and started threatening staff. My staff members and I remained calm and stayed quiet until [C.L.] could calm down; then [C.L.] turned to me, and asked could he have his tray. I remained calm, and said to him I didn't want to engage in a power struggle, with my head slightly down. I didn't want to make eye contact while [C.L.] was upset, and that's when he attacked me, and hit me with a closed fist while I was sitting down. I stood up as I was getting hit to descalate [sic] the situation

4

> I was in, and tried to hold [C.L.'s] left arm so I could inform CPI then [C.L.] and I legs got tangled. We fell to the floor and as we were falling [C.L.] took his arm and put it around my neck . . . .

D.E. 28–2 at 125–26.

UABH, through Mr. Nasiatka— the Administrative Director of Nursing— terminated Mr. Hester on November 10, 2015.  The stated reasons for the termination included a "violation of UABH 7.3.1 'Inappropriate behavior toward, or discourteous treatment of patients,'" as well as not following the core value "Do Right."  The counseling record specifically stated that Mr. Hester "went beyond what is appropriate becoming involved in an altercation with the patient rather than utilizing CPI techniques;" that the "physical altercation . . . was not part of CPI training for safely managing a patient's physical aggression;" and that his actions posed a risk to the patient's safety.  The counseling record also noted that Mr. Hester's written statement did not accurately reflect what had happened.

Mr. Nasiatka had the final responsibility for the termination decision.  But Kelly Mayer and Greg Erwin from Human Resources agreed as to the decision to terminate Mr. Hester.[1]

---

[1] Ms. Mayer was the Manager of Employee Relations, and Mr. Erwin was a human resources consultant with UABH.

5

UABH decided to fire Mr. Hester based on a review of the video footage of the incident and the resulting conclusion of the reviewers that Mr. Hester had failed to adhere to UABH policies and his CPI training. Specifically, the reviewers found that Mr. Hester failed to stand up and distance himself from the approaching patient, and he did not take a supportive stance, use an interim control position, block and move, or run away. Mr. Nasiatka believed that Mr. Hester's actions placed C.L. and other people in the common area at risk. Mr. Nasiatka also cited Mr. Hester's failure to describe the incident truthfully as another reason for his termination.

**B**

Mr. Hester filed an EEOC charge on March 31, 2016, alleging discrimination on the basis of his race. On August 30, 2016, the EEOC dismissed the charge and issued Mr. Hester a Notice of Right to Sue. Mr. Hester timely filed his complaint on November 28, 2016. The parties consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

During the litigation, Mr. Hester alleged that Mr. Nash, a white employee and his immediate supervisor, had previously put a patient in a chokehold and escaped discipline. Mr. Hester could not recall the date, time, or exact circumstances regarding that incident. Mr. Nash, in his deposition, denied putting a patient in a chokehold, and his supervisors were not aware of any purported misconduct by Mr. Nash.

6

The magistrate judge granted summary judgment in favor of UABH, ruling that Mr. Hester could not make a *prima facie* case of discrimination under Title VII because he failed to identify a similarly-situated comparator who was treated differently. The magistrate judge also concluded that Mr. Hester had failed to prove that the reasons stated for his termination were a mere pretext for racial discrimination.

## II

We review a district court's grant of summary judgment *de novo*. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1184 (11th Cir. 1997). "When reviewing a grant of summary judgment, we may affirm if there exists any adequate ground for doing so regardless of whether it is one on which the district court relied." *Fitzpatrick v. City of Atlanta.*, 2 F.3d 1112, 1117 (11th Cir. 1993).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the evidence creates a material factual dispute, we draw reasonable inferences in favor of the non-moving party, but "inferences based upon speculation are not reasonable." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012). "[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). But

"[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).

### III

Mr. Hester contends that the magistrate judge erred in ruling that he failed to establish a *prima facie* case of race discrimination because he did not show that UABH treated a similarly-situated employee outside of his protected class differently. He also contends that the magistrate judge erred in finding that he failed to create an issue of fact as to whether UABH's proffered reason for firing him was pretextual. Because we conclude that Mr. Hester is unable to meet his burden under the first prong under the *McDonnell Douglas* framework, we do not reach his alternative argument.

Under Title VII, it is unlawful for an employer to discriminate against any individual because of his race. *See* 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish discrimination through direct evidence, circumstantial evidence, or statistical proof. *See Alvarez v. Royal Atlanta. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). In cases involving circumstantial evidence, we generally use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to assess a *prima facie* case. *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).

Under *McDonnell Douglas*, the plaintiff may proceed by establishing a *prima facie* case. *See id*. This generally consists of showing that (1) he was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) similarly-situated employees outside of the protected class were treated differently. *See id*.

With respect to the last prong, some of our prior cases required that the plaintiff's proffered comparator be "*nearly identical to the plaintiff*." *Wilson v. B/E Aerospace*, 376 F.3d 1079, 1091 (11th Cir. 2004) (emphasis added), *abrogated by Lewis v. Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). In *Lewis*, which we decided en banc after the magistrate judge granted summary judgment to UABH, we rejected and abrogated the "nearly identical" standard. *See* 918 F.3d at 1227–28. We clarified that a plaintiff must identify a comparator outside of his protected class who was "*similarly situated in all material respects*," yet was treated more favorably under the same circumstances. *Id*. (emphasis added).

Pursuant to *Lewis,* a comparator should, generally, have (1) "engaged in the same basic conduct (or misconduct);" (2) "been subject to the same employment policy, guideline, or rule;" (3) "been under the jurisdiction of the same supervisor;" and (4) shared a similar "employment or disciplinary history" to the plaintiff. *Id*. at 1227–28.

9

Here, the magistrate judge did not err in ruling that Mr. Hester failed to make a *prima facie* case of discrimination under the *McDonnell Douglas* framework. Although the magistrate judge applied the pre-*Lewis* "nearly identical" standard, *Lewis* does not change the result because Mr. Nash was not "similarly situated to Mr. Hester in all material respects." *Id.* at 1226.

Mr. Hester did not show that Mr. Nash engaged in the same basic misconduct. *See id.* at 1227–28. As we explain, Mr. Hester's testimony that Mr. Nash violated CPI standards was conclusory.

First, the CPI standards permit employees to restrain patients under certain circumstances, and Mr. Hester did not remember any of the circumstances leading to Mr. Nash's alleged chokehold incident, except that the patient was combative. Mr. Nash, in his deposition, did not provide details about the situations in which he restrained any patients—indeed, he denied using a chokehold on a patient—so it was not possible to determine whether he violated the CPI standards. Due to the lack of detail in the record, the magistrate judge could not meaningfully compare Mr. Nash's and Mr. Hester's alleged misconduct to determine if they were similarly situated in all material respects. *See id.* [2]

---

[2] The differences in the rank and duties of Mr. Nash and Mr. Hester were not material, because both men were required to follow the CPI standards when interacting with patients, and there was no evidence that Assistant Nurse Managers were held to a different standard than PCTs. *See Lewis*, 918 F.3d at 1227–28.

Second, Mr. Nash and Mr. Hester also did not share a similar employment history. Mr. Hester's personnel counseling record reflected that his false statement was one of the two reasons for his firing. Mr. Nash never gave any statement, false or not, about his alleged misconduct. And that highlights a key difference in their employment histories.

Mr. Hester asserts that Ms. Hand had him terminated, and contends that other employees reported Mr. Nash's misconduct to Ms. Hand. We have stated, however, that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). Mr. Nash and Mr. Hester did not share the same supervisor. Mr. Nash was Mr. Hester's immediate supervisor, and Ms. Hand was Mr. Nash's supervisor. *See Lewis*, 918 F.3d at 1227–28. The evidence also indicates that Ms. Hand did not make the decision to terminate Mr. Hester and that Ms. Hand, Mr. Nasiatka, Ms. Mayer, and Mr. Erwin were all unaware of Mr. Nash's alleged misconduct. *See Jones*, 874 F.2d at 1541–42.

Under *Lewis*, Mr. Hester failed to show that Mr. Nash was similarly situated and that UABH treated him more favorably. Simply stated, Mr. Hester and Mr. Nash were not similarly situated in all material respects. *See Lewis*, 918 F.3d at 1227–28. Accordingly, the magistrate judge correctly concluded that Mr. Hester failed to establish a *prima facie* case under *McDonnell Douglas*.

11

## IV

For the foregoing reasons, we affirm the district court's summary judgment order.

**AFFIRMED.**