[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15477
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00070-LGW-JEG

CLYDE ANTHONY,
Individually and as Husband and Wife,
APRIL FLETCHER,
Individually and as Husband and Wife,

Plaintiffs-Appellants,

versus

COFFEE COUNTY,
ANDREAS "ANDY" THOMASON,
in his capacity as a Deputy Sheriff of the
Coffee County Sheriff's Department,
GERALD "JERRY" HUDSON,
in his capacity as a Deputy Sheriff of the
Coffee County Sheriff's Department,

Defendants-Appellees,

TOM RICE, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 2, 2014)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Clyde Anthony and his wife April Fletcher (collectively "Anthony") appeal

from the district court's grant of summary judgment in their civil rights action

against Coffee County and Coffee County Sheriff's Deputies Gerald Hudson and

Andreas Thomason (collectively "the defendants").[1]  After a thorough review of

the record, we affirm.

## I.

This civil action arises from an incident on August 7, 2010.  We review the

evidence in the light most favorable to Anthony as the non-moving party at

summary judgment.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  We

therefore present the facts in the light most favorable to Anthony, noting where

---

[1]  The case caption listed Hudson and Thomason "in [his] capacity as a deputy sheriff of the Coffee County Sheriff's Department."  The defendants did not argue, and the district court assumed, that this raised claims against Hudson and Thomason in both their individual and official capacities.  "This court has held that the complaint itself, not the caption, controls the identification of the parties and the capacity in which they are sued."  *Welch v. Laney*, 57 F.3d 1004, 1010-11 (11th Cir. 1995) (citing *Lundgren v. McDaniel*, 814 F.2d 600, 604 n.2 (11th Cir. 1987) (Captions "are not determinative as to the parties to the action.")).  We thus will assume the defendants are named in both their individual and official capacities.

2

there are discrepancies.  Between 11 p.m. and midnight, Clyde Anthony, an off-duty Georgia State Patrol officer, went to check on his mother-in-law after learning that a large fight had broken out on her street.  Dressed in a white tank top, gray shorts, and black sneakers, Anthony drove to the nearby street in his Ford Mustang with no law enforcement markings.   When he arrived, he spoke with two City of Douglas police officers who were blocking access to the street, identified himself as law enforcement, and was permitted access into the neighborhood.  As Anthony was slowly driving toward his mother-in-law's house, Thomason pointed his flashlight into Anthony's car.  Because there was a lot of activity on the street, Thomason was trying to be careful and see who was driving.  Anthony asked Thomason to "get the light out of my eyes" because he could not see, but Thomason did not remove the flashlight.  Instead, Thomason walked around to the front driver's side of the car and instructed Anthony to exit the car.  Although admittedly "not a happy camper," Anthony complied and started to inform Thomason that he was there to check on family.  Thomason started yelling, "You don't tell me to get nothing out of your eyes."[2]  The two were standing so closely that Anthony could feel the spit on his face, and Thomason's voice was so loud

---

[2]  Thomason recounted the incident differently in his deposition:  Anthony was shouting and cussing as he exited the car.  Although Anthony was dressed in shorts and a tank top, and Thomason did not see any weapon, Thomason nevertheless feared injury from Anthony.  When Thomason asked if he could search Anthony, Anthony refused and pushed him.

3

that it caught Hudson's attention.  Thomason instructed Anthony to turn around with his hands behind his back.[3]  As Anthony admits, he refused.

At this point, Hudson, who was standing behind Anthony, had his taser drawn.  As Thomason reached up to touch Anthony, Anthony raised his arms to chest height and pushed himself away.  Without issuing any warning, Hudson discharged his taser.[4]

Anthony was shocked only a single time.  While he was on the ground, he identified himself as a state trooper.  After that, the officers began to "act professionally."  Anthony received no medical attention and was allowed to return to his car.  Anthony then called his supervisor to report the incident, and he was told to get the officer's name.  As Anthony exited his car to get Hudson's name, another officer grabbed him and Thomason handcuffed him and placed him in the patrol car.  Anthony overheard several officers comment that Thomason and Hudson should arrest Anthony to "cover [their] ass," and to prevent Anthony from suing them.  Anthony did not hear Thomason or Hudson make any comments.  At the station, Thomason gave Anthony a citation for disorderly conduct.

In July 2012, Anthony and Fletcher filed their civil rights suit under 42 U.S.C. § 1983, alleging, relevant to this appeal, conspiracy (Count II), excessive

---

[3]  Hudson may have issued a similar instruction, but Anthony did not hear him.
[4]  In his deposition, Hudson stated that Anthony was aggressive and hostile, flailing his arms and striking Thomason several times.  Thomason testified that Anthony pushed him once with both hands.  The video tape of the incident shows Thomason reaching for Anthony, and Anthony raising his arms and either pushing or pushing away from Thomason.

4

force (Count III), false arrest (Count V), and state-law claims of intentional and negligent infliction of emotional distress (Counts VI and VII), personal injuries (Count VIII), intentional infliction of harm (Count IX), loss of consortium (Count X), and damage to reputation (Count XIII).  They further sought punitive damages and attorneys' fees (Counts XIV and XV).[5]  The district court ultimately granted the defendants' motion for summary judgment.  This appeal followed.

## II.

Anthony argues that the district court failed to consider the evidence in the light most favorable to him and improperly analyzed his false-arrest claim as a *Terry*[6] stop.  He disputes that there was probable cause for his arrest, and he argues that the defendants were not entitled to qualified immunity on his claims.  He also argues, for the first time, that the initial encounter with Thomason constituted an illegal arrest.  Anthony also challenges the district court's dismissal of his excessive-force claim, because there was no basis for the use of any force when the underlying arrest was illegal.

We review *de novo* the district court's grant of summary judgment. *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269, 1273 (11th Cir. 2010).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

---

[5]  Count I is captioned "Introduction," but contains no cause of action.  Counts IV and XII were dismissed prior to summary judgment.  Anthony does not appeal the dismissal of those counts. Additionally, all defendants except Hudson, Thomason, and Coffee County were dismissed prior to summary judgment.
[6]  *Terry v. Ohio*, 392 U.S. 1 (1968).

material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a). "We draw all factual inferences in a light most favorable to the

nonmoving party." *Shiver*, 549 F.3d at 1343.  Where, as here, there is a videotape

of the incident, we may "view[] the facts in the light depicted by the videotape."

*Scott v. Harris*, 550 U.S. 372, 381 (2007).

We do not consider arguments raised for the first time on appeal.  *Access*

*Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  And

arguments raised below but not raised on appeal are deemed abandoned.  *Holland*

*v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) (explaining that issues not raised in

the initial brief are abandoned).  Although Anthony contends that he alleged

Thomason unlawfully seized him when he initially removed Anthony from the car,

a review of the record shows that this was not Anthony's allegation in his

complaint.  Rather, Anthony made this argument in his response to the defendants'

motion for summary judgment.  This is not the proper manner in which to raise a

new claim.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th

Cir. 2004).  And because Anthony was represented by counsel, we will not

liberally construe his complaint to have raised the issue earlier.  *Timson v.*

*Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (noting that *pro se* plaintiffs are

entitled to liberal construction of their pleadings).  Thus, we do not consider this

6

issue and limit our discussion of the false-arrest claim to the disorderly conduct charge.[7]

Additionally, Anthony does not challenge the dismissal of the claims against Coffee County, or his excessive-force claims under the Fourteenth Amendment. And as to his state-law claims, Anthony asserts that the district court erred without offering any argument or citations to authority. In his appellate brief, Anthony simply refers to his prior arguments, but he does not identify the relevant state laws or offer any argument as to how his claims were viable under those laws. Because Anthony was represented by counsel, we will not liberally construe the brief to raise these arguments. *See* Fed. R.App. P. 28(a)(9)(A) (providing that argument section of an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). We thus consider these issues abandoned. [8]

We now turn to the remaining issues of the conspiracy, false arrest, and the use of excessive force.

### III.

A. Conspiracy

---

[7]  Although the district court addressed the lawfulness of the initial stop, we decline to do so because this issue was improperly raised.

[8]  In his reply brief, Anthony argues that he did not abandon his state-law claims, but that the district court rejected the state-law claims for the reasons given in the discussion of the federal law claims. This argument misreads the district court's summary judgment order. Although the district court stated that the claims failed for the reasons discussed in its analysis of the federal claims, the court set out the relevant state law and tied this into its previous analysis.

The district court properly granted summary judgment on Anthony's conspiracy claims.  Anthony alleged that another deputy made statements that Hudson and Thomason should arrest Anthony to "cover [their] ass."  But Anthony also admitted that he did not hear Hudson or Thomason make any such comments, nor did he hear them speak to each other before he was tasered.

We conclude that the district court properly granted summary judgment on these claims.  Anthony has offered nothing to show any agreement or violation of his rights.  *See Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013) (noting that a conspiracy claim requires evidence that the defendants agreed to violate the plaintiff's rights).  Moreover, "[a]lthough an agreement may be inferred 'from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct,'" *id.* (internal citation omitted), Anthony has not shown any circumstantial evidence "from which a reasonable fact-finder could make such an inference," *id.*  Anthony admitted that he did not hear Hudson and Thomason speak to each other before Hudson discharged his taser.  Nor did Anthony offer any evidence from which a fact-finder could have inferred such an agreement.  Additionally, as discussed below, Anthony failed to show any constitutional violation.  *Id.*  Accordingly, Anthony's conspiracy claims fail.

B. Excessive-force claim against Hudson

8

Under the Fourth Amendment, individuals possess the right to be free from excessive force during the course of a criminal apprehension. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). We analyze a claim of excessive force using an "objective reasonableness" standard. *Graham*, 490 U.S. at 388. This standard requires us to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake" under the facts of the particular case. *Id.* at 396 (internal citations and quotations omitted). We measure the quantum of force employed against the following factors — the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002). Importantly, we consider the officers' actions "from the perspective of a reasonable officer on the scene, rather than through the lens of hindsight," *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249 (11th Cir. 2004), recognizing that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments —in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation," *Graham*, 490 U.S. at 396–97.

Balancing these factors in this case, we conclude, as the district court did, that they weigh in favor of Hudson. First, Anthony's refusal to comply with Thomason's instructions was, at least, misdemeanor obstruction. *See* O.C.G.A. § 16-10-24. Although this crime was not severe, it had the potential to escalate into a serious and dangerous assault and battery. In fact, when Hudson discharged his taser, Thomason and Anthony were standing close enough together about to engage in physical contact. To a reasonable officer on the scene, this easily could have appeared to be a situation escalating into a fight. Therefore, we weigh this in Hudson's favor.

Second, whether the suspect poses an immediate threat to the safety of the officers is not viewed in hindsight. The video confirms that Thomason and Anthony were standing closely together when Thomason raised his arms to touch Anthony. The video then shows Anthony raising his arms and either pushing Thomason or pushing away from Thomason. The incident occurred between 11 p.m. and midnight in an area where police had recently responded to a fight involving close to 200 people. We note that Anthony did not identify himself to Thomason or Hudson as a law enforcement officer until after Hudson discharged the taser. Therefore, Thomason and Hudson had reason to be cautious of Anthony at the time Anthony exited his car. And, when Thomason asked Anthony to turn

10

around with his hands behind him, Anthony admittedly refused.  All of these facts result in weighing this second factor in Hudson's favor.

Finally, we consider whether the suspect actively resisted arrest or attempted to evade arrest by flight.  Anthony admitted that he refused to comply with Thomason's order to turn around.  We do not dispute that it might have been prudent for Hudson to have warned Anthony before discharging his taser, but his failure to do so does not result in the amount of force being excessive.

We find *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), instructive.  In *Draper*, the police used a single taser shock against a "hostile, belligerent, and uncooperative" suspect.  *Id.* at 1278.  The taser shock did not cause any serious injury and left the suspect "coherent" and "calmed."  *Id.*  This court observed that under the facts of the case, "[t]he single use of the taser gun may well have prevented a physical struggle and serious harm to either [the suspect] or [the officer]," and, therefore, "[u]nder the 'totality of the circumstances,' [the officer's] use of the taser gun did not constitute excessive force."  *Id.*

Although Anthony arguably was not belligerent, he was uncooperative, refusing Thomason's command.  And although Anthony argues that the officer could not have been in fear of injury, we again do not view this in hindsight.  The video shows the close contact and the escalating nature of the incident.  Under these facts, we will not second-guess the "split-second" determination Hudson

11

made.  *See Graham*, 490 U.S. at 396-97; *Edwards v. Shanley*, 666 F.3d 1289, 1295 (11th Cir. 2012) (acknowledging that *Graham* "counsels against second guessing").

Moreover, the single shock did not cause serious injury, and Anthony was able to stand up and communicate quickly afterwards.  *See Draper*, 369 F.3d at 1278 (noting that the single use of the taser was reasonably proportionate to the need for force).  Considering the totality of the circumstances, we conclude that the factors weigh in Hudson's favor.  *See Draper*, 369 F.3d at 1278 (discussing how the incident could have escalated into a physical struggle).  Accordingly, the district court properly granted summary judgment on the excessive-force claim.

C.  False-arrest claim

In his complaint, Anthony alleged that Hudson lacked probable cause to seize and arrest him.  He further alleged that "an officer of the Coffee County Sheriff's department" unlawfully arrested him.  Because Thomason — and not Hudson — arrested Anthony, and the district court considered the complaint sufficient to raise a false-arrest claim against Thomason, we will likewise consider the claim against Thomason.

Probable cause to arrest exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the

12

suspect has committed, is committing, or is about to commit an offense."

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

(internal citation and quotation marks omitted).

Under Georgia law, a person commits the offense of disorderly conduct

when he "[a]cts in a violent or tumultuous manner toward another person whereby

such person is placed in reasonable fear of the safety of such person's life, limb, or

health." O.C.G.A. § 16-11-39. As discussed previously, given the context of the

incident — it was late at night and a fight involving 200 people had just ended

when Thomason encountered Anthony, Thomason did not know if Anthony was

armed, and the two men engaged in a disagreement — it was not unreasonable for

Thomason to be concerned for his safety. Thus, there was probable cause to arrest

Anthony for disorderly conduct. Further, as discussed above, Anthony admitted

his refusal to cooperate with Thomason's orders, itself a misdemeanor obstruction

offense under Georgia law.

Accordingly, we conclude that Anthony's arrest for disorderly conduct was

supported by probable cause, and Anthony has not shown any constitutional

violation. The district court's order granting summary judgment is

**AFFIRMED.**