[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14945
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-00150-RBD-TBS

HARROLL INGRAM,

Plaintiff-Appellant,

versus

SECRETARY OF THE ARMY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 23, 2018)

Before MARCUS, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Harroll Ingram, an African American male, appeals the district court's grant

of summary judgment in favor of the Secretary of the Army ("Secretary") in his

employment discrimination lawsuit, filed pursuant to Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a) ("Title VII"), alleging disparate treatment, a hostile work environment, and retaliation.  Ingram's claims concern his December 2010 reassignment from his role as lead engineer and test director on the Bradley Advanced Training System ("BATS") project and the Bradley Conduct of Fire Trainer Enhanced ("COFT-E") project to the Bradley Fire Support Team ("BFIST"), a position he said was non-existent because it lacked funding.  Ingram alleged that Robert Briar, a white contract employee, sent harassing e-mails and engaged in other disrespectful conduct on the basis of Ingram's race, which his supervisors -- particularly, John Collins, Chris Dunlap, and Wafa Makhlouf -- did nothing about.  The district court granted summary judgment in favor of the Secretary on all of Ingram's claims.

On appeal, Ingram argues that the district court erred in granting summary judgment: (1) on his disparate treatment claim because he showed that the Secretary's proffered reason for his reassignment to BFIST was pretext; (2) on his hostile work environment claim because he introduced sufficient evidence to demonstrate a hostile work environment on account of his race; and (3) sua sponte on his retaliation claim because the Secretary failed to argue that he did not engage in protected conduct in its initial motion or assert a legitimate, non-retaliatory reason for his reassignment.  After thorough review, we affirm.

2

We review de novo a district court's grant of summary judgment, viewing all evidence and reasonable factual inferences drawn from it in the light most favorable to the nonmoving party. Crawford v. Carroll, 529 F.3d 961, 964 (11th Cir. 2008). Summary judgment is properly granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts may not make credibility determinations or weigh the evidence presented on summary judgment. Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001).

First, we are unpersuaded that the district court erroneously granted summary judgment on Ingram's disparate treatment claim. Under Title VII, an employer may not discharge, or otherwise discriminate against, any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race. 42 U.S.C. § 2000e-2(a)(1). Disparate treatment can include a tangible employment action, like a firing or demotion. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (en banc). If only circumstantial evidence of discrimination, and no direct evidence, is offered, we apply McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012). Under its framework, a plaintiff first must establish a prima facie case of discrimination that creates a presumption that the employer unlawfully discriminated against him. Flowers v. Troup Cty., 803 F.3d

3

1327, 1336 (11th Cir. 2015).  "At all times, the plaintiff retains the ultimate burden of persuading the court that []he has been the victim of intentional discrimination." Id. (quotation omitted).  Once a prima facie case is made, the burden of production shifts to the employer to articulate a "legitimate, non-discriminatory reason" for the challenged employment action.  Id. (quotation omitted).  If the employer satisfies this burden, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for unlawful discrimination.  Id.

In showing pretext, the plaintiff may rely on the same evidence he relied on in making his prima facie case, although merely quarreling with the reason is insufficient.  Wilson v. B/E Aero, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).  The plaintiff must show that the employer's proffered reason for the employment decision was not the true reason, and can do so by pointing to its "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions."  Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162-63 (11th Cir. 2006) (quotation omitted).  But a reason is still not a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason."  Id.  Further, the truth of the proffered reason is not relevant, but rather, the inquiry is whether the plaintiff's supervisors were motivated by their belief that the proffered reason was true.  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).  We do not consider whether the employer's employment

4

decision was wise or accurate, but only whether it was motivated by racial animus. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010).

Here, even if we assume, as the district court did, that Ingram established a prima facie case of disparate treatment based on race, the court correctly granted summary judgment on Ingram's disparate treatment claim. As the record reveals, Ingram failed to satisfy his burden to demonstrate that the Secretary's reason for reassigning him was pretext. Although Ingram asserted that racial discrimination was the basis for his reassignment to BFIST, he presented no evidence other than his unsupported assertions and the races of the parties that this was the true reason. Even viewed in the light most favorable to Ingram, the undisputed evidence in the record demonstrates that Ingram and Briar were engaged in an ongoing and unresolved personal conflict when Ingram was reassigned. Although the conflict between Ingram and Briar likely resulted in an unpleasant work environment, it does not demonstrate that racial animus motivated the decision to reassign Ingram to BFIST. See Brooks, 446 F.3d at 1162-63; Elrod, 939 F.2d at 1470.

Further, none of Ingram's arguments on appeal support his claim that he established pretext. Whether the reassignment to BFIST would actually have separated Ingram from Briar goes to the wisdom of the decision to reassign Ingram to that position, not whether his supervisors believed he needed to be removed from the COFT-E team based on the unresolvable conflict. See Alvarez, 610 F.3d

5

at 1266; Elrod, 939 F.2d at 1470.   Likewise, Ingram's arguments about the feasibility of the BFIST position in light of its lack of funding and whether his supervisor Dunlap discussed removing Ingram from the team with other colleagues also do not challenge his supervisors' belief that he needed to be removed from COFT-E.  See Alvarez, 610 F.3d at 1266; Elrod, 939 F.2d at 1470.  As for whether Briar was disciplined for his part in the conflict, the only evidence in the record suggests that Dunlap counseled him, but lacked the authority to otherwise punish or fire Briar because he was a contractor.  Finally, Ingram failed to present any evidence in support of his claim that the Secretary had a history of not promoting African American engineers or of punishing African American employees for complaining of harassment by white employees.

Similarly, we find no merit to Ingram's argument that the district court erred in granting summary judgment on his hostile work environment claim.  Disparate treatment can include "a hostile work environment that changes the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned."  Reeves, 594 F.3d at 807 (quotation omitted).  It is a bedrock principle that not all objectionable conduct or language constitutes discrimination under Title VII.  Jones v. UPS Ground Freight, 683 F.3d 1283, 1297 (11th Cir. 2012).  "Innocuous statements or conduct, or boorish ones" that do not relate to the race of the actor or of the plaintiff are not counted.  Id. (quotation omitted).

6

To establish a prima facie case of a hostile work environment, a party must show that (1) he is a member of a protected group; (2) who has been subjected to unwelcome harassment; (3) based on a protected characteristic; (4) that was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) that his employer is vicariously or directly liable for the environment. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). The requirement of "severe or pervasive" harassment contains an objective and a subjective component. Id. at 1276. Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. Id. In assessing the objective severity of the harassment, we consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

In this case, Ingram failed to demonstrate that he was subjected to harassment on the basis of his race. See Miller, 277 F.3d at 1275. Although the e-mails on which Ingram based his claim reveal that he had a contentious working relationship with Briar, they do not suggest that the conflict was the result of racial animus, much less that Ingram was subjected to a severe or pervasive environment

7

of harassment based on his race that a reasonable person would find hostile or abusive. See Miller, 277 F.3d at 1276. Indeed, Ingram testified he was not aware of anyone -- Collins, Briar, Dunlap, or otherwise -- making racial comments or other discriminatory remarks. And the record shows that Ingram did not mention race to his supervisors Collins and Makhlouf until after the decision had been made to reassign him to BFIST. The record also contradicts Ingram's claim that he received no support from the leadership because, following his complaints, he met with supervisors and Briar was counseled. Thus, the district court properly granted summary judgment on Ingram's race-based hostile work environment claim.

Finally, we're unpersuaded by Ingram's argument that the district court erred in sua sponte granting summary judgment on his retaliation claim. A district court may grant summary judgment on a ground not raised by a party or sua sponte, so long as the court gives notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(2)-(3). "The notice requirement is not an unimportant technicality, but a vital procedural safeguard subject to strict enforcement." Ga. State Conf. of the NAACP v. Fayette County Bd. of Comm'rs, 775 F.3d 1336, 1344 (11th Cir. 2015) (quotation omitted). However, failure to give notice can be harmless error if a party is not deprived of the opportunity to present all facts or arguments that would have precluded summary judgment. See Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995).

Title VII prohibits an employer from retaliating against an employee because the employee "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Accordingly, Title VII forbids retaliation against an employee who reports race discrimination in the workplace. Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 273 (2009). Absent direct evidence of discrimination, we employ the McDonnell Douglas framework when analyzing claims for retaliation. See Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009). Under this framework, a plaintiff establishes a prima facie case of retaliation by showing that he: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) established a causal link between the protected activity and the adverse action. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir.1997).

Here, even assuming the district court erred by failing to give Ingram proper notice as to the grounds for granting summary judgment as to his retaliation claim, this error was harmless. For starters, Ingram has failed to argue on appeal that he would have included additional argument or evidence in support of this claim given proper notice. See Restigouche, 59 F.3d at 1213. Moreover, on the full record before us, the district court correctly determined that Ingram failed to demonstrate that he engaged in a protected activity, and therefore, failed to establish a prima facie case of retaliation. See Bryant, 575 F.3d at 1307-08.

Although Title VII forbids retaliation against an employee reporting race discrimination, see Crawford, 555 U.S. at 273, the undisputed facts in the record reflect that, prior to his reassignment to BFIST, Ingram did not communicate his belief that he was being subjected to race discrimination. The e-mails Ingram sent to Collins, Dunlap, and Makhlouf reflect a work related conflict with Briar, but do not suggest that Ingram conveyed any belief that the conflict was motivated by racial animus. Additionally, Ingram testified that he did not mention race or race discrimination until after the decision to reassign him to BFIST had already been made, further indicating that he failed to communicate that he believed racial animus was at issue.

In short, the district court correctly granted summary judgment in favor of the Secretary, and we affirm.

**AFFIRMED**.