[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 19-11260

————————————————

MARK A. THOMPSON,

Plaintiff-Appellant,

*versus*

DEKALB COUNTY, GA,
OVERTIS BRANTLEY,
in her individual capacity,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-02244-MHC

————————————————

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and LUCK, Circuit Judges.

LUCK, Circuit Judge:

Mark Thompson, a former attorney for DeKalb County, Georgia, was fired in 2015. Thompson sued the county, claiming that he was fired because of his age, in violation of the Age Discrimination in Employment Act. The district court granted summary judgment for the county. Thompson now appeals. After oral argument and careful review of the record, we affirm.

## FACTUAL BACKGROUND[1]

Thompson was a senior assistant county attorney for the DeKalb County law department. He was the lead (and effectively sole) attorney representing the county in *Champion v. DeKalb County*, a breach of contract case initiated by county contractor Paul Champion in 2010. While investigating the case, Thompson discovered that Champion had fraudulently overbilled the county with the assistance of a county employee. Thompson testified about the fraud before a grand jury in February 2012.

---

[1] Because Thompson—the non-moving party—appeals the district court's summary judgment for the county, we discuss the facts in the light most favorable to him. *See Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1342 (11th Cir. 2020) ("In reviewing the propriety of summary judgment, 'we view the evidence in the light most favorable to the non-moving party.'" (citation omitted)).

In March 2013, Overtis Brantley became the new county attorney. Upon assuming her role, Brantley held a meeting with the entire law department. At the meeting, Brantley mentioned that she had spoken with the county's chief executive officer, who said that he was "tired of looking at all these older people" and "wanted the [c]ounty workforce to look younger." She said that the chief executive asked her, "Why can't we have younger people?" Brantley brought up the chief executive's comments "in the context of the fact that she . . . wanted to hire baby lawyers in the law department." She said that it was her "goal to hire baby lawyers" and that she was "filling the nursery with baby lawyers." Brantley later used the phrase "baby lawyers" at "almost every meeting." Whenever Brantley was hiring a new person to the law department, she would say: "I've got another baby lawyer. I'm filling the nursery."

Brantley also met with Thompson "one on one" to discuss his workload. Thompson indicated that he felt overworked and needed assistance with *Champion*. The meeting became "very weird" because Brantley "mocked" Thompson and "ma[de] crazy-looking faces" at him. She belittled him by insinuating that he was "naïve" and "taking it too seriously . . . that [he] had caught people stealing in the [c]ounty."

The county hired outside counsel to help Thompson with *Champion* about a year after his request. The county's outside counsel moved for summary judgment based on sovereign immunity, and after the state trial court denied the motion, the county began preparing an interlocutory appeal.

Thompson's immediate supervisor, Laura Johnson, directed Thompson to make sure that the county's appeal had a "clean record" with no extraneous facts regarding the fraud.  On November 13, 2014, Thompson told Johnson that she was making a "mistake of enormous consequence" by excluding the fraud-related facts from the appellate record.  Johnson acknowledged that she and Thompson had "very different opinions" but concluded that it was "in the [c]ounty's best interest . . . to simplify" and exclude the fraud-related facts.  After Johnson instructed outside counsel to file the notice of appeal without the fraud-related facts, Thompson informed Johnson that he wished to "withdraw from the case" and did not "want [his] name on the notice of appeal" because Johnson's position was "totally contrary to [his]."

On December 3, 2014, Thompson requested Johnson's signature on his notice of substitution of counsel.  Johnson explained that she did not need to sign the notice because no one was being substituted; it was just a withdrawal.  But Thompson "insist[ed]" that either Johnson or Brantley sign the notice.  He claimed that the applicable rule was "plain and straightforward" and that "[t]he [c]ounty should follow the law."

Brantley and Johnson met with Thompson to discuss his withdrawal from the case.  During the meeting, Brantley "mock[ed]" and "berat[ed]" Thompson, repeatedly telling him that he "didn't work well with others," "always thought that [he] was the smartest person in the room," "was not a team player," and "acted like a child" who would "pick up [his] toys and leave" when

he couldn't get his way. Brantley said she was "upset" about Thompson's withdrawal from *Champion*, but "her reasoning seemed artificial" to Thompson. "The only thing that seemed to be real [to Thompson] was [that] [Brantley] was intent on berating [him]." He tried explaining to Brantley and Johnson that he had an "ethical problem" with Johnson's handling of the appeal, but Brantley "guffawed and just laughed at that[,] as if [it] was just nonsense."

Johnson took notes about the meeting. According to Johnson's notes, Brantley told Thompson that "she considered his demand to withdraw a 'temper tantrum'" and that he offended her by saying "he did not want to be 'associated with' the kinds of decisions being made in the case." Johnson told Thompson that he offended Johnson, too, by calling her "dumb" earlier in the meeting. Johnson later testified that Thompson was "really being quite hostile" throughout the meeting, and while he wasn't yelling or pounding his fists, Thompson did "raise[] his voice."

Brantley eventually signed Thompson's notice of substitution, which was filed on December 5, 2014. That same month, Brantley informed Thompson that she considered his withdrawal to be a fireable offense.

On May 6, 2015, Johnson visited Thompson's office to inform him that Champion had filed a motion involving Thompson. Thompson asked Johnson for more details about the motion, but Johnson refused to give him additional information. After Thompson read the motion and realized that Champion was seeking to

hold Thompson personally liable for Champion's attorney's fees, Thompson went to Johnson's office to ask her what had happened in the case. Johnson said she didn't know. Thompson responded that it was unacceptable for her to refuse to answer his questions, and Johnson replied, "You're interrogating me," and asked him to leave. After Johnson asked him to leave a second time, Thompson left and sent an email to Brantley requesting that Brantley "schedule a meeting ASAP" because Johnson was "refusing to answer [his] questions about the case" and "withholding information." During his meetings with Johnson that day, Thompson was "upset" and "firm with her," but he wasn't "angry."

Johnson took notes about the May 6 meetings with Thompson. According to Johnson's notes, Thompson discussed Champion's motion "in a hostile way," accused Johnson of lying, and called outside counsel incompetent. Johnson relayed these observations to Brantley. According to Thompson, he did not accuse Johnson of lying, and he did not remember calling outside counsel incompetent.

Brantley and Johnson met with Thompson again, this time to discuss his May 6 meetings with Johnson. Brantley "just went off on" Thompson about him "acting like [he's] the smartest person in the room" and behaving "like a child" who "can't get along with others." Brantley repeatedly said that Thompson was "looking really ugly again" because of the way he was acting. Thompson explained that he didn't trust outside counsel and that he wasn't confident outside counsel would adequately defend him against

Champion's motion.  Thompson was "upset" during the meeting, but he wasn't "in any bad way" and he was "certainly coherent."

Thompson later met with Johnson to discuss an affidavit for the response to Champion's motion.  Champion's motion claimed that Thompson had "fabricated . . . allegations and knowingly signed and filed a false pleading."  But, according to Thompson, he had made allegations that he believed to be true based on information that he had received from a county employee, and he later withdrew those allegations after discovering they were false.  Thompson told Johnson, "We need to say that the [county employee] lied to me."  But Johnson responded that they couldn't "throw [the county employee] under the bus."

On May 29, 2015, Thompson met with Brantley, Johnson, and outside counsel to discuss Champion's motion for attorney's fees.  Brantley was "riding" Thompson from the beginning of the meeting, telling him that he wasn't a "team player" and that he always acted "like he's the smartest guy in the room."  Thompson responded that he was a team player but that "almost everybody was lying to [him]."  Thompson explained that he didn't want to "fall on [his] sword" to protect the county employee who had given him false information, and he claimed that Johnson had "set [Thompson] up" by forcing him to rely on that county employee.

Brantley reacted as though Thompson was "losing [his] head"—as if Thompson's words were "terrible."  She continued "berating" him, and at the end of the meeting, Brantley told

Thompson, "I've had it with you. You need to start looking for another job."

On June 19, 2015, Brantley and Johnson met with Thompson for a final time. Brantley asked Thompson whether he had "found another job." Thompson said that he hadn't, and Brantley responded, "Well, you've had a couple of weeks to find another job." She continued, "I am terminating you, and the reason is . . . because you withdrew from the *Champion* case. And you can either resign in lieu of termination, or I will terminate you next Friday." Brantley "explicitly told [Thompson] she was terminating [him] because [he] withdr[e]w from the *Champion* case." She also said she might be willing to give Thompson severance if he resigned.

Thompson later emailed Brantley telling her what he would accept as severance. On June 25, 2015, Brantley rejected Thompson's severance request and informed him that his termination would be effective as of 5:00 p.m. the following day. Brantley then wrote Thompson a letter elaborating on the reasons for his termination. The letter stated:

> I have long been concerned by your lack of demonstrated ability to discuss legal issues in a clear and concise way. You have also responded to stressful litigation situations in a hostile and arrogant manner when interacting with me and others within this office during recent months. This type of behavior is not consistent with the team environment I have been working to build in the Law Department. I hope and

believe that you will be able to find a work situation that will be a better match for your skills and temperament.

Thompson was fifty-four years old when he was fired. Twelve of the thirteen lawyers hired by the county after Thompson's termination were in their thirties.

## PROCEDURAL HISTORY

On May 10, 2016, Thompson sued DeKalb County in Georgia state court, but the county removed the case to the Northern District of Georgia. Thompson claimed that the county discriminated against him because of his age, in violation of the Age Discrimination in Employment Act.[2] He alleged that "[he] was over the age of forty at his termination"; that the county "sought to replace older lawyers with younger lawyers"; and that "[he] was replaced by a younger attorney under the age of forty."

The county moved for summary judgment. It argued that Thompson couldn't establish a prima facie case of age discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

---

[2] Thompson also raised federal race discrimination claims against the county and Brantley in her individual capacity and a state retaliation claim against the county. The district court granted summary judgment for the county and Brantley on the federal claims and remanded the state claim to state court. Thompson does not appeal the district court's summary judgment for the county and Brantley on his federal race discrimination claims and he does not challenge the district court's remand of his state retaliation claim.

(1973), because Thompson did not establish "that he was replaced by or lost his position to [a] younger individual." The county also argued that Thompson failed to show that its legitimate, non-discriminatory reasons for Thompson's termination were pretexts for age discrimination.

Thompson opposed the county's motion, arguing that he satisfied the *McDonnell Douglas* test and, alternatively, presented "a convincing mosaic of circumstantial evidence." Thompson argued that "*every* person hired after [him] was in his or her thirties," which "unquestionably satisfied [his] *prima facie* case of age discrimination." He argued that the county's "shift in justification" for his termination "alone" was evidence of pretext, and that the county's hiring pattern, Brantley's ageist "baby lawyer" remarks, and evidence that Thompson's coworkers thought he was a good and well-liked lawyer in the office showed that the county's legitimate, non-discriminatory reasons for his termination were "not worthy of credence." Thompson also argued that, in the alternative, he established a genuine issue of fact by presenting "'a convincing mosaic of circumstantial evidence' that raise[d] a reasonable inference that the [county] discriminated" against him.

The magistrate judge recommended that the district court grant the county's motion. The magistrate judge explained that, under the *McDonnell Douglas* test, Thompson had to show "either [] that [he] was replaced by a person outside of his protected class[,] or [] that he was treated less favorably than a similarly-situated individual outside of his protected class." The magistrate judge

concluded that Thompson "failed to show a dispute of material fact on either of these points." Because Thompson "failed to meet his burden of coming forward with competent replacement []or comparator evidence," the magistrate judge recommended that the district court grant summary judgment for the county.

Thompson objected to the magistrate judge's report, arguing that he established a prima facie case of age discrimination and presented sufficient evidence of pretext under *McDonnell Douglas*. Thompson also argued that he presented a "convincing mosaic of circumstantial evidence that raise[d] a reasonable inference that the [county] discriminated . . . against [him]," making "summary judgment . . . [in]appropriate." He argued that the magistrate judge didn't address Brantley's "ageist" remarks and the county's hiring pattern from which "a jury could infer discrimination even without a comparator or replacement."

The district court overruled Thompson's objections and adopted the magistrate judge's report. The district court agreed with the magistrate judge that Thompson failed to establish a prima facie case under the *McDonnell Douglas* test because Thompson "presented no evidence that he was replaced by someone outside of his protected class" and "identified no comparator outside his protected class who was treated more favorably." The district court found that the "ageist" remarks were not directed at Thompson, and that Thompson's age discrimination claim was "half-hearted at best." Because Thompson provided "no evidence that would create a disputed issue of material fact as to being

replaced by someone outside the protected class or treated less favorably than similarly situated individuals outside the protected class," the district court concluded that Thompson failed to establish a prima facie case of age discrimination and granted summary judgment for the county.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). Summary judgment is appropriate when the evidence, viewed in favor of the non-moving party, *id.*, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a).

## DISCUSSION

Thompson argues that the district court erred in granting summary judgment for the county on his age discrimination claim. The Age Discrimination in Employment Act provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" if that individual is at least forty years old. 29 U.S.C. §§ 623(a)(1), 631(a).

We apply the *McDonnell Douglas* burden-shifting framework to age discrimination claims that rely on circumstantial

evidence.[3] *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–34 (11th Cir. 2013). "Under this framework, a plaintiff must first establish a prima facie case of discrimination." *Id.* at 1332. "Next, the defendant must articulate a legitimate, non-discriminatory reason for the challenged employment action." *Id.* "If the defendant articulates one or more such reasons, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." *Id.* "The burden of persuasion always remains on the plaintiff in an [Age Discrimination in Employment Act] case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but[]for' cause of the adverse employment action." *Id.* (citation omitted).

Thompson contends that the district court erred in granting summary judgment on his age discrimination claim for three reasons. First, he argues that he presented a prima facie case of age discrimination under the *McDonnell Douglas* test because he was replaced by a younger lawyer. Second, Thompson argues that the county's legitimate, non-discriminatory reasons for his termination

---

[3] Thompson argues that Brantley's "ageist" remarks "could very easily constitute direct evidence of an age animus." But direct evidence, "if believed, proves the existence of a fact in issue without inference or presumption." *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (citation omitted). Brantley's remarks are not inference-free. *See id.* (noting that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor" are direct evidence of unlawful discrimination); *see, e.g., Carter v. City of Miami*, 870 F.2d 578, 582 & n.10 (11th Cir. 1989) (collecting cases).

were pretexts because the county shifted its reasons for firing him and he provided evidence from coworkers that he was "polite, thoughtful, and helpful."  Third, Thompson argues that, even if he failed to present a prima facie case of age discrimination, he showed a convincing mosaic of age discrimination.  Thompson contends that Brantley's "ageist remarks," the county's hiring pattern, and the county's "pretextual justification" for his termination together raised a reasonable inference of the county's discriminatory intent.

We agree with Thompson that he created a genuine dispute that he was replaced by a younger lawyer.  But we affirm summary judgment for the county because Thompson failed to show that the county's legitimate, non-discriminatory reasons for his termination were pretexts and because he failed to present a convincing mosaic of circumstantial evidence that would allow a jury to infer the county's discriminatory intent.

*Prima Facie Case*

To establish a prima facie case that an employee was terminated in violation of the Act, the plaintiff must show that:  (1) he was at least forty years of age at the time of his termination; (2) he was qualified for the position he held; (3) he was terminated; and (4) he was replaced by someone "substantially younger" than him. *See Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

The district court and the parties assumed that Thompson satisfied the first three parts, and we do, too.  But the district court

erred in concluding that Thompson failed to prove the fourth part of the *McDonnell Douglas* test.

Thompson satisfied the fourth part by showing that he was replaced by an attorney substantially younger than him. When asked whether Thompson was replaced by William Scott—a lawyer twenty-four years younger than Thompson—Brantley answered: "I think that's correct." Indeed, Scott was the first person hired after Thompson's termination, only three months after Thompson's departure. And Scott was certainly "substantially younger" than Thompson. *See, e.g.*, *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997) (observing that as little as a three-year age difference is "legally significant for [Age Discrimination in Employment Act] purposes"). This was enough summary judgment evidence to show a genuine dispute about the fourth part of the *McDonnell Douglas* test.

### Pretext

Under the *McDonnell Douglas* test, after a plaintiff establishes a prima facie case of age discrimination, the defendant "must articulate a legitimate, non-discriminatory reason for the challenged employment action." *Sims*, 704 F.3d at 1332. The county explained that it fired Thompson because: (1) he "withdrew from the *Champion* case"; (2) he lacked "demonstrated ability to discuss legal issues in a clear and concise way"; (3) he "responded to stressful litigation situations in a hostile and arrogant manner when interacting with [Brantley] and others within th[e] office during

recent months"; and (4) his "behavior [was] not consistent with the team environment [Brantley] [was] working to build in the Law Department." These were legitimate, non-discriminatory reasons for Thompson's termination, and Thompson doesn't argue otherwise. *See Chapman*, 229 F.3d at 1034 ("A subjective reason is a legally sufficient, legitimate, non[-]discriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.").

The final step under the *McDonnell Douglas* test is for the plaintiff "to show that the employer's stated reason is a pretext for discrimination." *Sims*, 704 F.3d at 1332. Although the district court did not address pretext, "[w]e may affirm a grant of summary judgment on any ground supported by the record." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019). Because the issue of pretext was fully briefed and raised at oral argument, we exercise our discretion to consider it on appeal. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 n.5 (11th Cir. 2004) ("If we were so inclined, we could remand the pretext issue to the district court to consider in the first instance. However, where the record is so clear as to the final outcome of the case and is sufficiently developed for us to decide the issue, we conclude that a remand here would be a waste of time and judicial resources.").

To show a genuine dispute that the county's "legitimate, non-discriminatory reason[s]" for firing Thompson were "pretext[s]," Thompson needed to demonstrate that "but[]for" his age, the county would not have fired him. *See Sims*, 704 F.3d at 1332.

Because the county's legitimate, non-discriminatory reasons were "one[s] that might motivate a reasonable employer," Thompson needed to address the county's reasons "head on and rebut [them]" to survive summary judgment. *See Chapman*, 229 F.3d at 1030 ("[T]he employee cannot succeed by simply quarreling with the wisdom of [a] reason [that might motivate a reasonable employer].").

"[A] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citation omitted). A plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact[]finder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (citation omitted). The plaintiff carries the burden to provide evidence from which "a reasonable fact finder" could conclude that but for the plaintiff's age, the employer would not have fired him. *Sims*, 704 F.3d at 1332.

Thompson argues that two key facts demonstrated that the county's legitimate, non-discriminatory reasons for his termination were pretexts for age discrimination: (1) the county's "shifting" justifications for Thompson's termination; and (2) Thompson's coworkers' "disagree[ment]" with Brantley's beliefs about Thompson's behavior and work performance. But this evidence failed to

show that the county's reasons were false and that discrimination was the real reason for firing him.

### "Shifting" Reasons

Thompson and the dissenting opinion argue that the county's legitimate, non-discriminatory reasons for his termination were pretexts because the reasons were "shifting." *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004) (concluding that the decision maker's "shifting reasons" could allow a fact finder to question the decision maker's credibility and infer that adverse employment action occurred for reasons other than those stated). They rely on his termination letter, noting that the letter "include[d] more reasons than were actually told to [him] in his termination meeting." While Brantley "explicitly told" Thompson on June 19 that "she was terminating [him] because [he] withdr[e]w from the *Champion* case," the termination letter said that Thompson's "lack of demonstrated ability to discuss legal issues in a clear and concise way," his "respon[se] to stressful litigation situations in a hostile and arrogant manner when interacting with [Brantley] and others," and his failure to behave "consistent[ly] with the team environment" were the bases for his termination.

This evidence did not show "shifting" reasons. Before signing Thompson's notice of substitution in early December 2014, Brantley told Thompson that she considered his withdrawal from *Champion* to be a "temper tantrum"; that his withdrawal "upset her"; that he "didn't work well with others"; that he "always

thought that [he] was the smartest person in the room"; that he "was not a team player"; and that he "acted like a child" who would "pick up [his] toys and leave" when he couldn't get his way. That same month, Brantley informed Thompson that she considered his withdrawal from *Champion* to be a fireable offense, and she continued to confront Thompson about his unprofessional behavior until his termination in June 2015. Thompson conceded that the county's reasons in his termination letter "all . . . stemmed from the *Champion* matter."

Indeed, all of the county's reasons for firing Thompson—his withdrawal from *Champion*, his inability to work with others and discuss legal issues in a clear and concise manner, and his hostile reactions to stressful litigation situations—were interrelated, and Brantley consistently confronted Thompson with concerns about his behavior from December 2014 through June 2015, when he was fired. *See Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458 (11th Cir. 1997) ("Although the company gave differing explanations for the selection of employees to be discharged, saying on the one hand that seniority played no role in the process and that only an employee's performance was considered while, on the other hand, asserting that Lewis was discharged because he had the least seniority, its reasons are not, as the district court observed, necessarily inconsistent."); *see also Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("At most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis

for Tidwell's termination does not, however, prove pretext."); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) ("Shifting and inconsistent explanations can provide a basis for a finding of pretext. But the explanations must actually be shifting and inconsistent to permit an inference of mendacity." (internal citation omitted)). The summary judgment evidence showed that the county's reasons for terminating Thompson did not shift, but were part of a consistent problem with Thompson withdrawing from the *Champion* case.

The dissenting opinion also asserts that a reasonable jury could find it "odd" that Brantley waited seven months after Thompson withdrew from *Champion* to fire him and could "draw the reasonable inference that Thompson's withdrawal from *Champion* was not the real reason for his termination." But Thompson never argued to the district court or to us that the county's reasons were pretexts because of the seven months between his withdrawal and termination. Even if Thomson made this pretext argument, the summary judgment evidence was undisputed that Brantley told Thompson as early as December 2014 that withdrawing from *Champion* was a "terminable offense." Brantley didn't fire him then because Johnson "discouraged" her from doing it. There was no oddity for the jury to infer.

The dissenting opinion suggests that nothing happened to Thompson in the seven months between his withdrawal from *Champion* and his termination. But this is not supported by the record. Thompson testified that Brantley repeatedly admonished

him in the months before his termination.    For example, at one meeting after Thompson withdrew from *Champion*, Brantley "berat[ed]" him because he "was not a team player" and he "didn't work well with others." At another meeting, Brantley told Thompson that she was still "upset" that he had withdrawn from *Champion* and that he couldn't "get along with others." And at a third meeting, Brantley was "riding" Thompson again for not being a "team player."

### Coworkers' Observations

Thompson also argues that the county's reasons were pretexts because Brantley's description of his behavior conflicted with coworkers' observations "that he communicated in a coherent manner" and that he was "polite, thoughtful, and helpful." And the dissenting opinion contends that the county's legitimate, non-discriminatory reasons for firing Thompson were "belied . . . by his co-workers' opinions of him." But the "inquiry into pretext" doesn't "center[] on" Thompson's coworkers' perspectives or "reality as it exists outside of the decision maker's head"; rather, it turns on the decision maker's "beliefs." *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). An employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for an unlawful reason." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (alteration adopted) (citation omitted).

22                    Opinion of the Court                    19-11260

Thompson did not rebut Brantley's subjective beliefs that prompted his termination.  See Chapman, 229 F.3d at 1034 (concluding that subjective beliefs are "legally sufficient, legitimate, non[-]discriminatory reason[s]" if the decision maker "articulates a clear and reasonably specific factual basis" for her beliefs).  It was undisputed that in the months before he was fired Brantley admonished Thompson for his behavior:  Thompson conceded that Brantley repeatedly told him that he was acting "ugly" and wasn't a "team player"; Thompson admitted to criticizing Johnson for "set[ting] [him] up"; Thompson didn't deny that Brantley accused him of acting disrespectfully during the May 29 meeting; and Thompson didn't dispute that Johnson relayed her concerns to Brantley regarding Thompson's May 6 conduct.  While Thompson denied accusing Johnson of lying and didn't remember calling outside counsel incompetent, Thompson didn't refute Brantley's subjective belief that Thompson "was making [Johnson] miserable based on the few things [Johnson] would share with [Brantley] about [Thompson's] conduct, particularly after the motion for attorney fees came in" on May 6.

*        *        *        *

Considering Thompson's evidence of pretext together, see Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1292 (11th Cir. 1998), we conclude that Thompson did not establish a genuine dispute that the county's legitimate, non-discriminatory reasons for firing Thompson were pretexts for age discrimination.

*Convincing Mosaic*

Thompson contends that, even if he didn't establish a prima facie case under *McDonnell Douglas*, he presented a convincing mosaic of circumstantial evidence that the county fired him for age discrimination. He argues that three parts of the record "foreclosed the granting of summary judgment": (1) Brantley's "ageist" remarks; (2) the county's "hiring practices"; and (3) the county's "pretextual justification" for his termination.

A "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision[]maker.'" *Id.* (internal footnote and citation omitted). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (alteration adopted and citation omitted). A convincing mosaic "may consist only of the plaintiff's prima facie case and of the evidence rebutting the employer's proffered reasons." *Holland v. Gee*, 677 F.3d 1047, 1056 n.2 (11th Cir. 2012).

The plaintiff carries the ultimate burden of providing sufficient evidence to "yield[] a reasonable inference of the employer's discrimination." *Smith*, 644 F.3d at 1346 n.86; *see Holland*, 677 F.3d at 1056. After all, "convincing mosaic" is just a "metaphor" for making a circumstantial case. *Ortiz v. Werner Enters.*, 834 F.3d 760, 764–65 (7th Cir. 2016) (explaining that the "convincing mosaic" is "not a legal test of any kind" but a "metaphor").

### "Ageist" Remarks

Thompson argues that a jury could infer discriminatory intent from Brantley's "ageist remarks." We consider discriminatory remarks "in conjunction with the entire record." *Ross*, 146 F.3d at 1291–92. It was undisputed that, in context, Brantley was referring to "less experienced" attorneys, not younger attorneys, when she made the "baby lawyer" remarks. Brantley wanted to shift the law department into a team model where less experienced lawyers were supervised by more experienced attorneys. Because the existing lawyers had all practiced law for over ten to fifteen years, Brantley was "generally . . . hiring for entry level" positions. *See, e.g.*, *Pirone v. Home Ins. Co.*, 559 F. Supp. 306, 312 (S.D.N.Y.) ("The fact that entry level employees are uniformly younger than persons terminated clearly has no significance. Logic would seem to suggest that this would be the natural order of things."), *aff'd*, 742 F.2d 1430 (2d Cir. 1983) (unpublished). Indeed, Thompson admitted that Brantley used "baby lawyers" to refer only to inexperienced attorneys: "The people that she was hiring and that she was

describing as baby lawyers were basically lawyers that were . . . just out of law school" or "out for a couple of years."

As one former supervising attorney explained, "baby lawyers" just meant "lawyers that had . . . less experience." Brantley made the remarks, the former supervising attorney said, "in keeping with her general philosophy about . . . lawyers working on teams and so forth . . . she would use it sometimes to talk about having a . . . more experienced lawyer and a less experienced lawyer working on a case." That's how three other lawyers understood the phrase, too: "I always thought of it as a term of endearment for people who didn't have . . . a lot of legal experience"; "I did not understand that to be [Brantley's] mindset, that she was specifically targeting young lawyers. . . . She would refer to the . . . newly-hired lawyers[] as 'baby lawyers'"; "[T]he way I interpret it . . . is experience to me. You could be a younger attorney and have a lot of experience in a certain area, or you can be an older attorney and not have a lot of experience in a certain area. So I didn't necessarily equate it to age but more so . . . people gaining experience . . . ." *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (finding that the employer's comment that she was "hiring someone at a 'more junior level' referenced the need to hire an attorney at a lower level in the organization, as opposed to the age of the desired candidate"; that, "in this context[,] 'more junior level' could very well refer to an older individual who went to law school later in life or otherwise had less experience"; and that the employer's comment was not "even age-related, and

therefore not 'probative of [the employer's] discriminatory intent'" (citation omitted)).  In context, Brantley's remarks referred to experience—not age—and they would not allow a reasonable jury to infer that the county discriminated against Thompson because of his age.

The dissenting opinion argues that others in the county attorney's office understood Brantley's "baby lawyer" remarks to express a preference for younger lawyers.  But our inquiry "centers on the employer's beliefs, not the employee's beliefs[,] and . . . not on reality as it exists outside the decision maker's head." *Alvarez*, 610 F.3d at 1266.  And the summary judgment evidence was undisputed about what was in Brantley's head when she made the "baby lawyer" remarks.  Brantley testified that when she was referring to hiring young or "baby" lawyers, she "very much wanted to have an organizational chart where there were less experienced lawyers who could do . . . 'grunt work'—research, gathering documents, writing the first draft of motions and briefs—and that the more experienced lawyers would bring them along."  Brantley believed she was referring to experience, not age.

The dissenting opinion also argues that the county's chief executive officer's comments about wanting a younger workforce was evidence of the county's discrimination against older workers.  But the chief executive was not involved in firing Thompson, and "statements by nondecisionmakers . . . will not satisfy the employee's burden" in a circumstantial evidence case.  *See Steger v.*

19-11260            Opinion of the Court                    27

*Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003) (internal quotation marks and citation omitted).

### Hiring Pattern

Thompson and the dissenting opinion contend that a jury could infer discriminatory intent from the county's "hiring practices."  While twelve of the thirteen lawyers hired by the county after Thompson's termination were in their thirties, the county provided an age-neutral explanation for its hiring:  Brantley was hiring for "entry level" positions because she wanted "less experienced lawyers" to do "grunt work" under the supervision of the experienced attorneys already in the office, causing a natural trend in age. *See Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1315–16 (11th Cir. 1998) (concluding that, even though plaintiffs showed that the employer terminated eight engineers all over forty-years-old and in the same month hired ten new engineers with just one over forty-years-old, "this superficial presentation . . . failed to support any inference of intentional age discrimination after [the company] explained the data in a plausible, age-neutral fashion").

Thompson did not offer evidence about the law department's vacancies, job descriptions, applicant pools, or selection processes that provided context to the county's new hires.  With no information about the other candidates' ages and qualifications, for example, a reasonable jury would have no basis to draw inferences of discriminatory intent from the county's hiring pattern. *See Zaben*, 129 F.3d at 1458 (rejecting argument about ageist hiring pattern because there was no evidence "about the demographics of

job applicants"); *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991) ("Statistics . . . without an analytic foundation[] are virtually meaningless. To say that very few black[ applicants] have been selected by Honda does not say a great deal about Honda's practices unless we know how many black[ applicants] have applied and failed and compare that to the success rate of equally qualified white applicants.").[4]

### Pretext

As we explained previously, the county's legitimate, non-discriminatory reasons for firing Thompson were not pretexts. Thompson argues that the county's reasons were pretexts because the county provided "shifting" justifications for his termination and because his coworkers "disagreed" with Brantley's beliefs about Thompson's behavior and performance. The evidence did not show "shifting" reasons, but rather that the county's reasons "all . . . stemmed from the *Champion* matter." And Thompson presented no evidence that rebutted Brantley's subjective beliefs that prompted his termination. Because the circumstantial evidence offered by Thompson did not establish pretext, this evidence

---

[4] We need to clarify one point about the county's hiring pattern. The dissenting opinion suggests that the county replaced thirteen lawyers over the age of forty with thirteen entry level attorneys mostly under the age of forty. That is not supported by the record. The evidence shows that, during Brantley's tenure as county attorney, nine lawyers left the office. Seven were over forty and two were under forty. When Brantley retired in 2017, nine lawyers over the age of forty were still working in the office. Two of them were older than Thompson, including one attorney who was seventy-four.

did not contribute to a "convincing mosaic" that would allow a jury to infer intentional discrimination.

## CONCLUSION

The district court erred in concluding that Thompson failed to establish the fourth part of his prima facie burden under *McDonnell Douglas*. But we still affirm because Thompson failed to establish a genuine issue of material fact as to whether the county's legitimate, non-discriminatory reasons for his termination were pretexts for age discrimination and because he failed to present a convincing mosaic of circumstantial evidence that the county fired him because of his age.

**AFFIRMED.**

19-11260                ROSENBAUM, J., dissenting                1

ROSENBAUM, Circuit Judge, dissenting:

I agree with the Majority Opinion's conclusion that Thompson, at the very least, established a genuine issue of material fact on the fourth part of his prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—that he was replaced by someone "substantially younger" than he was. But Thompson also raised a genuine issue of material fact at the final stage of the *McDonnell Douglas* framework, concerning whether the county's explanation for his termination was pretextual. Alternatively and additionally, Thompson presented enough evidence to allow a reasonable jury to conclude that he set forth a "convincing mosaic" of age discrimination. The Majority Opinion reaches the opposite conclusion on both these analyses only because it weighs the evidence. But on summary judgment, we cannot do that. And so I respectfully dissent from these aspects of the Majority Opinion and from the judgment.

I begin by noting the relevant considerations under each framework of analysis: Under the *McDonnell Douglas* framework, after the employee establishes a prima facie case of age discrimination, the employer "must articulate a legitimate, non-discriminatory reason for the challenged employment action." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the employer does so, to survive summary judgment, the employee must "show that the employer's stated reason is a pretext for discrimination." *Id.*

Alternatively, a "plaintiff will always survive summary judgment if he presents [a convincing mosaic of] circumstantial

evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  We have explained that a plaintiff may show a convincing mosaic in different ways. *See Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).  Among other evidence, we have said that "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) . . . the employer's [pretextual] justification", *id.* (cleaned up), may satisfy that burden.

Thompson's evidence created a genuine dispute of material fact under each of these frameworks.

First, multiple employees testified that Brantley repeatedly emphasized her desire to hire "baby lawyers" and to "fill up the nursery."  To be sure, some took these comments to refer to less-experienced lawyers.  But others concluded Brantley was expressing a preference for younger lawyers.  And Brantley herself acknowledged she felt "very strongly about training young lawyers."

Not only that, but Brantley held a meeting specifically to tell her staff that the new chief executive of the county complained about the age of the staff.  Indeed, Brantley told the staff that the chief executive said that he was "tired of looking at all these older people" and "wanted the [c]ounty workforce to look younger," and asked, "Why can't we have younger people?"

19-11260          Rosenbaum, J., dissenting          3

The Majority Opinion dismisses this evidence, saying "our inquiry centers on the employer's beliefs, not the employee's beliefs, and not on reality as it exists outside the decision maker's head." Maj. Op. at 26 (cleaned up). And it disregards the chief executive's statements because "the chief executive was not involved in firing Thompson." *Id.* That misses the point.

Based on her statements to the staff about the chief executive's remarks, a reasonable jury could conclude that Brantley thought the chief executive wanted younger employees, so she made hiring and firing decisions geared towards responding to the chief executive's concerns as she perceived them. And while the Majority Opinion is surely right that the employer's beliefs, not the employee's beliefs, govern our analysis, we cannot look inside the decision maker's head to see her true reasons for her actions. So when other witnesses reasonably understand their employer's words and actions to evidence a discriminatory intent against older workers, whether the decision maker in fact had that discriminatory intent presents a jury question. This is particularly so here, given Brantley's references to the chief executive's remarks about being "tired of looking at all these older people," wanting the "[c]ounty workforce to look younger," and asking why the county couldn't "have younger people," and then deciding to replace all the older lawyers who left with thirteen entry-level positions—

4                    ROSENBAUM, J., dissenting                    19-11260

which were far more likely to be (and in fact turned out to be) occupied by significantly younger people.[1]

Sure, after observing the witnesses testify, a reasonable jury could alternatively conclude, as the Majority Opinion has, that Brantley never had any intention to discriminate against older people. But on summary judgment, it is not our role to weigh the evidence and decide which of two reasonable inferences to draw from it.

Second, Brantley was not consistent about her reason for firing Thompson. She told Thompson she was firing him because of his withdrawal from the *Champion* case, but the termination letter did not even mention the withdrawal. Instead, it listed

---

[1] The Majority Opinion says that this dissent "suggests that the county replaced thirteen lawyers over the age of forty with thirteen entry level attorneys mostly under the age of forty," and "[t]hat is not supported by the record." Maj. Op. at 28 n.4. To be clear, that is not what I am saying (and the Majority Opinion cites nothing in this dissent for that proposition). Rather, my point is simply that of the thirteen attorneys Brantley hired during her tenure, twelve—92%—were under forty, and the thirteenth—in his early forties—still was more than ten years younger than Thompson. For the sake of completeness as to the other statistics the Majority Opinion cites, of the nine attorneys who left the office during Brantley's tenure, seven were over forty, and of the two under forty, Brantley had hired both of them (and then replaced them with attorneys under forty when they left), and one of the two stayed with the county and just transferred to the office of the chief executive (who, as I have noted, Brantley said wanted younger employees). Finally, of the nine lawyers over forty who remained in the office when Brantley retired, six (two-thirds) were younger at the time of Brantley's retirement than Thompson was when he was fired.

Thompson's "lack of demonstrated ability to discuss legal issues in a clear and concise way," his "respon[se] to stressful litigation situations in a hostile and arrogant manner when interacting with [Brantley] and others," and his failure to behave "consistent[ly] with the team environment" were the bases for his termination. A reasonable factfinder could construe the difference in reasons between Brantley's oral explanation and the written one as "shifting" reasons. Not only that, but Brantley's stated reasons in the termination letter are belied by the favorable performance reviews Thompson consistently received and by his coworkers' opinions of him. These circumstances could allow a reasonable factfinder to question the sincerity of the reasons Brantley expressed for firing Thompson.

But they aren't the only circumstances that a reasonable jury could find reflect negatively on the shifting reasons for Thompson's termination. Rather, a jury could question Brantley's stated reason for firing Thompson at the time she terminated his employment—his decision to withdraw from the *Champion* case—given that the withdrawal occurred in November 2014, and she did not end Thompson's employment for another seven months, in June 2015. Nor does the record contain evidence that Thompson's withdrawal was under investigation or review during those seven months. If Thompson's withdrawal from *Champion* was a "fireable" offense, a reasonable jury could find it odd that it took Brantley seven months after learning of it to get around to pulling the trigger. And viewed in light of the shifting reasons Brantley offered for

6                    Rosenbaum, J., dissenting                    19-11260

Thompson's termination, a jury could draw the reasonable infer-ence that Thompson's withdrawal from *Champion* was not the real reason for his termination but rather was pretextual.

The Majority Opinion tries to avoid this problem by first saying that Thompson never made this argument. *See* Maj. Op. at 20. But the argument is part and parcel of his shifting-reasons ar-gument. Perhaps for this reason, the Majority Opinion then goes on to assert that no jury would question the seven-month lag be-tween Thompson's withdrawal from the *Champion* case and his termination, since Brantley told Thompson at the time of his with-drawal that it was a "terminable offense," but Johnson "discour-aged" her from firing him. *See id.* But that only makes Thomp-son's firing seven months later, purportedly for withdrawing from *Champion*, all the more questionable. As I have noted, it's not as though Brantley was investigating Thompson's actions during the intervening seven months. Nor was Thompson on any type of pro-bation or other disciplinary status. Yet seven months later, without any further action on the withdrawal than had occurred at the time Brantley said it was a "terminable offense," Brantley told Thomp-son he was fired and named only the *Champion* withdrawal as the reason.[2] A reasonable jury would be well within its discretion to find that fact indicative of pretext.

---

[2] The Majority Opinion asserts that I "suggest[] that nothing happened to Thompson in the seven months between his withdrawal from *Champion* and his termination." Maj. Op. at 20. That is inaccurate. What I have said—and what the Majority Opinion cannot rebut—is that Brantley's seven-month lag

19-11260                 ROSENBAUM, J., dissenting                 7

Last, the evidence shows that Brantley was in fact commit-ted to hiring and promoting young attorneys, both before and after she fired Thompson.  The three attorneys hired in 2015 were in their thirties. In fact, of the thirteen attorneys hired during Brant-ley's tenure, twelve were in their thirties.  And the thirteenth was still ten years younger than Thompson.  This represented a demo-graphic shift in the office that did not go unnoticed by staff—one attorney in the office testified that after Brantley's arrival, "a num-ber of . . . senior people [who] had been there . . . for a while left, and then younger people were hired."  While the Majority Opinion attempts to sideline this evidence by criticizing Thompson for not showing the applicant pool from which these thirteen attorneys were hired, it misses the bigger point:  Brantley chose to replace seasoned, older attorneys in the office with entry-level attorneys, virtually guaranteeing that they would be significantly younger.

Taking all this evidence together and viewing it in the light most favorable to Thompson, as we are required to do at summary

---

between Thompson's withdrawal from *Champion* and Brantley's statement that she was firing Thompson for withdrawing from *Champion* cannot be ex-plained by any kind of investigation, disciplinary process, or probation because none happened.  Seven months is a long time.  While Brantley claims that Johnson "discouraged" her from firing Thompson at the time of the with-drawal, even if a jury chose to believe that, that does not explain the seven-month delay.  And the fact that no process or anything else to which the Ma-jority Opinion can point explains the delay provides another basis for why a reasonable jury could conclude that Brantley's stated reason for firing Thomp-son was pretextual.

8                     ROSENBAUM, J., dissenting                    19-11260

judgment, Thompson demonstrated disputed issues of material fact sufficient to overcome summary judgment.  Of course, in the end, a jury could very well find Brantley's explanations credible and reasonable.  But that's the jury's prerogative, not ours.  We do not get to weigh the evidence to resolve a summary-judgment motion. I respectfully dissent.